1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   LEONARD CURTIS SMITH,                    1:04-cv-06637-AWI-GSA (PC)

                      Plaintiff,

12                                            ORDER DISMISSING AMENDED
        v.                                    COMPLAINT WITH LEAVE TO AMEND

13
     CANU, et. al.,                           (Doc. 19)
14
                      Defendants.
15   _____/

16

17   **I.      SCREENING ORDER**

18           Leonard Curtis Smith  ("Plaintiff") is a state prisoner proceeding pro se and in forma

19   pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

20           Plaintiff filed the instant action on November 8, 2004, in the U.S. District Court for the

21   Eastern District of California, Sacramento Division.  The case was subsequently transferred to

22   this Court and received on December 2, 2004.  On April 10, 2006, this Court issued an Order

23   dismissing the complaint with leave to amend.  Plaintiff filed his first amended complaint on July

24   24, 2006.

25           **A.      Screening Requirement**

26           The Court is required to screen complaints brought by prisoners seeking relief against a

27   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

28   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

                                                 1

1   legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

2   that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

3   § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

4   paid, the court shall dismiss the case at any time if the court determines that . . . the action or

5   appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

6   1915(e)(2)(B)(ii).

7           A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

8   which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

9   support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding,

10  467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v.

11  Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a

12  complaint under this standard, the court must accept as true the allegations of the complaint in

13  question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the

14  pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.

15  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

16          **B.      Summary of Plaintiff's First Amended Complaint**

17          Plaintiff's first amended complaint is voluminous (79 pages of pleading with 257 pages

18  of exhibits), largely incoherent, unorganized, and extremely difficult to decipher.  Plaintiff has

19  peppered legal citations, jargon and argument throughout his statement of facts making only

20  generalized allegations, referring the reader to the attached exhibits for specific facts.  Plaintiff

21  appears to be attempting to file a class action on behalf of a large number of plaintiffs.  Plaintiff

22  also appears to complain of a number of diverse, unrelated, allegations against approximately 30

23  defendants, which occurred on a number of different dates at various correctional facilities.

24          As best the Court can tell, plaintiff is alleging that he was retaliated against for filing

25  inmate grievances regarding "lunches" and "milk" being placed on the floor outside inmate cells

26  during lockdowns.  Plaintiff also uses various legal phrases (such as cruel and unusual

27  punishment, class-action, respondeat superior) that imply he is attempting to state additional

28  claims, but then fails to state factual allegations sufficient for the Court to ascertain whether he

1  might be able to state cognizable claims thereunder.

2      Plaintiff delineates five causes of action: (1) deprivation of personal property; (2) unequal

3  protection of the law; (3) cruel and unusual punishment; (4) lack of procedural due process; and

4  (5) violation of his right to legal/confidential mail.  The Court provides the below standards

5  based on plaintiff's stated causes of action.

6      **C.      Pleading Requirements**

7          **1.  *Federal Rule of Civil Procedure 8(a)***

8          "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

9  exceptions," none of which applies to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534

10  U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a

11  short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R.

12  Civ. Pro. 8(a).  "Such a statement must simply give the defendant fair notice of what the

13  plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.  A court

14  may dismiss a complaint only if it is clear that no relief could be granted under any set of facts

15  that could be proved consistent with the allegations.  Id. at 514.  "'The issue is not whether a

16  plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

17  the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and

18  unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting

19  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171

20  (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .

21  .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal

22  pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490

23  U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply

24  essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin.,

25  122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.

26  1982)).  Plaintiff's first amended complaint does not comply with Rule 8(a) as it does not contain

27  a short and plain statement of the claim(s) plaintiff is making.

28          **2.  *Federal Rule of Civil Procedure 18***

3

1    Plaintiff errantly attempts to state multiple unrelated claims against multiple defendants.

2    "The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to

3    relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

4    independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

5    against an opposing party.' Thus multiple claims against a single party are fine, but Claim A

6    against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

7    claims against different defendants belong in different suits, not only to prevent the sort of

8    morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

9    pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

10   frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28

11   U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

12      Plaintiff is advised that if he choses to file a second amended complaint, and fails to

13   comply with Rule 18(a) the Court will count all frivolous/noncognizable unrelated claims that

14   are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the

15   future.

16                    **3.  *Linkage Requirement***

17      The Civil Rights Act under which this action was filed provides:

18          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the
19          deprivation of any rights, privileges, or immunities secured by the
            Constitution . . . shall be liable to the party injured in an action at
20          law, suit in equity, or other proper proceeding for redress.

21   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

22   the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See

23   Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

24   (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

25   constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

26   in another's affirmative acts or omits to perform an act which he is legally required to do that

27   causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th

28   Cir. 1978).  In order to state a claim for relief under section 1983, plaintiff must link each named

4

1    defendant with some affirmative act or omission that demonstrates a violation of plaintiff's

2    federal rights.

3         **D.    Claims for Relief**

4              **1.** *Deprivation of Personal Property*

5         Plaintiff alleges that he was deprived of his personal property for four months.  The Due

6    Process Clause protects prisoners from being deprived of property without due process of law,

7    Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their

8    personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an

9    authorized, intentional deprivation of property is actionable under the Due Process Clause, see

10   Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455

11   U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor

12   unauthorized intentional deprivations of property by a state employee "constitute a violation of

13   the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a

14   meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517,

15   533 (1984).

16        Plaintiff has not alleged sufficient facts for the Court to determine what of his personal

17   property he was deprived of, and whether the deprivation was authorized.  Further, in the event

18   that the deprivation was authorized, and therefore actionable under section 1983, plaintiff has not

19   alleged any facts suggesting that he was deprived of due process.  As long as plaintiff was

20   provided with process, prison officials may deprive him of his property.

21             **2.** *Equal Protection*

22        The Equal Protection Clause requires that persons who are similarly situated be treated

23   alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal

24   protection claim may be established in two ways.   First, a plaintiff establishes an equal

25   protection claim by showing that the defendant has intentionally discriminated on the basis of the

26   plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668,

27   686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the

28   defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.

1   Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

2       If the action in question does not involve a suspect classification, a plaintiff may establish

3   an equal protection claim by showing that similarly situated individuals were intentionally treated

4   differently without a rational relationship to a legitimate state purpose.  Village of Willowbrook

5   v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1

6   (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004);

7   SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal

8   protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an

9   identifiable class; (2) the plaintiff was intentionally treated differently from others similarly

10  situated; and (3) there is no rational basis for the difference in treatment. Village of

11  Willowbrook, 528 U.S. at 564.   If an equal protection claim is based upon the defendant's

12  selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement

13  is based upon an "impermissible motive." Squaw Valley,  375 F.3d at 944; Freeman v. City of

14  Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

15      Plaintiff has not shown that he is a member of a protected class, nor has he shown that his

16  denial of classification review was not rationally related to a legitimate state purpose.

17          **3.** *Cruel & Unusual Punishment*

18      "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

19  Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8

20  (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and

21  responsive to contemporary standards of decency." Id. (quotations and citations omitted).

22  "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-

23  confinement claim," and "deliberate indifference to medical needs" violates the Eighth

24  Amendment "only if those needs are 'serious.'" Id. at 9 (citation omitted).  With respect to these

25  types of claims, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay

26  for their offenses against society, only those deprivations denying the minimal civilized measure

27  of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."

28  Id. at 9 (quotations and citations omitted).  With respect to excessive force claims, however, the

1 malicious and sadistic use of force to cause harm *always* violates contemporary standards of

2 decency, regardless of whether or not significant injury is evident.  Id. at 9; see also Oliver v.

3 Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines

4 de minimis uses of force, not de minimis injuries)).

5       Plaintiff's allegations of being subjected to cruel and unusual punishment by being

6 deprived of classification reviews and "procreative liberty" are not "extreme deprivations."

7 Plaintiff has no constitutional right to a particular classification status, see Moody v. Daggett,

8 429 U.S. 78, 88, n.9 (1976), nor does he have a constitutional right to be incarcerated at a

9 particular correctional facility.  Meachum v. Fano, 427 U.S. 215, 224-25 (1976).  Further, the

10 Court is unable to locate any statements made by plaintiff to identify an unconstitutional motive

11 regarding classification status.

12                     **4.  *Procedural Due Process***

13       Plaintiff alleges that he has fundamental liberty interests regarding "marital privacy,"

14 classification review, "procreative liberty," and transfer status.

15       The Due Process Clause of the Fourteenth Amendment protects prisoners from being

16 deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S.

17 539, 556 (1974).  Plaintiff has not alleged any facts that would support a claim that he was

18 deprived of a protected interest without procedural due process.

19       As previously stated, plaintiff has no constitutional right to a particular classification

20 status, see Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976), nor does he have a constitutional right

21 to be incarcerated at a particular correctional facility.  Meachum v. Fano, 427 U.S. 215, 224-25

22 (1976).

23       "It is well established that a parent has a "fundamental liberty interest" in "the

24 companionship and society of his or her child" and that "[t]he state's interference with that liberty

25 interest without due process of law is remediable under [42 U.S.C. § ]1983."  Kelson v. City of

26 Springfield 767 F.2d 651, 654-55 (9th Cir. 1985) (citing Santosky v. Kramer 455 U.S. 745, 753

27 (1982) "[T]his constitutional interest in familial companionship and society logically extends to

28 protect children from unwarranted state interference with their relationships with their parents."

1  Smith v. City of Fontana 818 f.2d 1411, 1418 (9th Cir. 1987) overruled on other grounds by

2  Hodges-Durgin v. de la Vina 199 F.3d 1037 (9th Cir. 1999).  Moreover, "the First Amendment

3  protects those relationships, including family relationships, that presuppose 'deep attachments

4  and commitments to the necessarily few other individuals with whom one shares not only a

5  special community of thoughts, experiences, and beliefs but also distinctively personal aspects of

6  one's life.'" Board of Dir. v. Rotary Club 481 U.S. 537, 545 (1987) (quoting Roberts v. United

7  States Jaycees, 468 U.S. 609, 619-20 (1984); see also Conti v. City of Fremont, 919 F.2d 1385,

8  1388-1389 (9th Cir. 1990)."  Lee v. City of Los Angeles 250 F.3d 668, 685 (9th Cir. 2001).

9         While plaintiff does have a fundamental liberty interest in his familial relationship(s), he

10  fails to state any facts to show how and why his familial relationship was infringed upon, and

11  what, if any, due process he was provided regarding the infringement.

12         **5.  *Mail***

13         Plaintiff delineates a fifth cause of action for "Violation of the First Amendment Legal

14  and Confidential Mail." Doc. 19, pp. 74-75.  While plaintiff states a number of legal citations

15  and/or argument, the Court is unable to find any factual allegations to support this cause of

16  action.

17         The mere fact that prison officials open and conduct a visual inspection of a prisoner's

18  legal correspondence does not state a claim for violation of a prisoner's constitutional rights.  See

19  Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th

20  Cir. 1996).  Prison officials may, consistent with the First Amendment, open mail from attorneys

21  in the presence of the prisoner for visual inspection.  See Wolff v. McDonnell, 418 U.S. 539,

22  576-7 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981).  In Wolff v.

23  McDonnell, the Supreme Court noted that inspecting mail from attorneys in the presence of the

24  inmate did all, and perhaps even more, than the Constitution requires.  Id. at 577.  The issue of

25  whether or not prison officials may also, consistent with the First Amendment, open and visually

26  inspect mail from attorneys outside the presence of the prisoner has not been decided by the

27  Supreme Court or by the Ninth Circuit.  In Wolff v. McDonnell, the legal mail at issue was mail

28  sent to respondent from his own attorney.  Correspondence between an attorney and a client is

1   entitled to special protection under the attorney-client privilege.  "Mail from the courts, as

2   contrasted to mail from a prisoner's lawyer, is not legal mail."  Keenan v. Hall, 83 F.3d 1083,

3   1094 (9th Cir. 1996).  "All correspondence from a court to a litigant is a public document, which

4   prison personnel could if they want inspect in the court's files."  Id. at 1094 (citing to Martin v.

5   Brewer, 830 F.2d 76, 78 (7th Cir. 1987)).

6          **6.  *Retaliation***

7          While retaliation is not one of plaintiff's stated causes of action, it can be implied from

8   plaintiff's factual material.  Allegations of retaliation against a prisoner's First Amendment rights

9   to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778

10  F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir.

11  1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  To establish a prima facie case,

12  plaintiff must allege and show that defendants acted to retaliate for his exercise of a protected

13  activity, and defendants' actions did not serve a legitimate penological purpose.  See Barnett v.

14  Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Pratt 65 F.3d at 807.  The injury asserted in retaliation

15  cases is the retaliatory conduct's chilling effect on the plaintiff's First Amendment rights.  See

16  Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997); Resnick v. Hayes, 213 F.3d 443, 449 (9th

17  Cir. 2000).

18         A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus

19  between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action).

20  McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of

21  Educ. v. Doyle, 429 U.S. 274 (1977).  The prisoner must submit evidence, either direct or

22  circumstantial, to establish a link between the exercise of constitutional rights and the allegedly

23  retaliatory action.  Pratt, 65 F.3d at 806.  Timing of the events surrounding the alleged retaliation

24  may constitute circumstantial evidence of retaliatory intent.  See Pratt 65 F.3d at 808; Soranno's

25  Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

26         **7.  *Class Action***

27         Plaintiff states that this litigation is a class action.  Plaintiff, however, is a non-lawyer

28  proceeding without counsel.  It is well established that a layperson cannot ordinarily represent the

1   interests of a class.  See McShane v. United States, 366 F.2d 286 (9th Cir. 1966).  This rule

2   becomes almost absolute when, as here, the putative class representative is incarcerated and

3   proceeding pro se.  Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975).  In direct terms,

4   plaintiff cannot "fairly and adequately protect the interests of the class" as required by Fed. R.

5   Civ. P. 23(a)(4).  See Martin v. Middendorf, 420 F. Supp. 779 (D.D.C. 1976).  This action,

6   therefore, will not be construed as a class action and instead will be construed as an individual

7   civil suit brought by plaintiff.

8                    **8.  *Supervisorial Liability***

9         Supervisory personnel are generally not liable under section 1983 for the actions of their

10  employees under a theory of respondeat superior and, therefore, when a named defendant holds a

11  supervisorial position, the causal link between him and the claimed constitutional violation must

12  be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

13  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim

14  for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some

15  facts that would support a claim that supervisory defendants either: personally participated in the

16  alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent

17  them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation

18  of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v.

19  Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d

20  1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be

21  alleged to support claims under section 1983.  See Leatherman v. Tarrant County Narcotics Unit,

22  507 U.S. 163, 168 (1993).

23        Plaintiff makes various general statements regarding supervisorial defendants – i.e.

24  "Plaintiff's sue every official involved, their superiors and their superior's superiors, etc., that

25  these was personally involved in this 'collusion,' and allowed the violations to 'happen.'"  Doc.

26  19, pp. 35-36.  However, such general assertions are not factually specific enough to state a claim

27  that supervisorial personnel personally participated in the alleged deprivation of constitutional

28  rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented

10

1  a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the

2  moving force of the constitutional violation.'" Hansen v. Black at 646.

3                              9.  *State Law Claims*

4       Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

5  jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

6  action within such original jurisdiction that they form part of the same case or controversy under

7  Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under §

8  1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

9  discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  "The district

10  court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .

11  the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

12  1367(c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before

13  trial, . . . the state claims should be dismissed as well."  United Mine Workers of America v.

14  Gibbs, 383 U.S. 715, 726 (1966).

15  **II.      CONCLUSION**

16       For the reasons set forth above, plaintiff's first amended complaint is dismissed, with

17  leave to file an amended complaint within thirty days.

18       Plaintiff must demonstrate in his complaint how the conditions complained of have

19  resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227

20  (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is

21  involved.  There can be no liability under section 1983 unless there is some affirmative link or

22  connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423

23  U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588

24  F.2d 740, 743 (9th Cir. 1978).

25       Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to

26  relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

27  independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

28  against an opposing party.' Thus, multiple claims against a single party are fine, but Claim A

1   against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

2   claims against different defendants belong in different suits.

3          Plaintiff is also advised that it is inappropriate to attach exhibits to a complaint. See Rule

4   8, Federal Rules of Civil Procedure.  Further, the Court cannot serve as a repository for the

5   parties' evidence.  Originals or copies of evidence (i.e., prison or medical records, witness

6   affidavits, etc.) should not be submitted until the course of litigation brings the evidence into

7   question (for example, on a motion for summary judgment, at trial, or when requested by the

8   court).   At this point, the submission of evidence is premature as the plaintiff is only required to

9   state a prima facie claim for relief.  Thus, in amending his complaint, plaintiff should simply

10  state the facts upon which he alleges a defendant has violated his constitutional rights and refrain

11  from submitting exhibits.

12         Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be

13  complete in itself without reference to any prior pleading.  As a  general rule, an amended

14  complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

15  Once plaintiff files an amended complaint, the original pleading no longer serves any function in

16  the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

17  involvement of each defendant must be sufficiently alleged.

18         Based on the foregoing, it is HEREBY ORDERED that:

19         1.      Plaintiff's first amended complaint is dismissed, with leave to amend;

20         2.      The Clerk's Office shall send plaintiff a civil rights complaint form;

21         3.      Within **thirty (30) days** from the date of service of this order, plaintiff must file a

22                 second amended complaint curing the deficiencies identified by the court in this

23                 order; and

24         4.      If plaintiff fails to comply with this order, this action will be dismissed for failure

25                 to obey a court order.

26      IT IS SO ORDERED.

27   **Dated:    April 28, 2008**              **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE
28